FILED

2023 May-17  PM 03:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA

ECOLAB Inc., and NALCO COMPANY,
LLC d/b/a Nalco Water, an Ecolab Company
and/or Nalco Water,

      Plaintiffs,

v.

SIMON WALKER,

      Defendant.

No. No. 7:22-CV-01469-LSC

## FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES AND OTHER RELIEF

Plaintiffs Ecolab Inc. ("Ecolab") and Nalco Company LLC d/b/a Nalco Water, an Ecolab Company and/or Nalco Water ("Nalco") (hereafter Ecolab and Nalco may be collectively referred to as "Company" or "Plaintiffs"), through undersigned counsel, bring this Complaint for Injunctive Relief, Damages, and Other Relief against Defendant Simon Walker, hereby alleging and stating as follows:

## NATURE OF ACTION

1.     This action is brought by Plaintiffs to enforce their legal rights to stop former employee, Defendant Simon Walker, from further misappropriating, improperly using, and illegally disclosing Plaintiffs' confidential information and trade secrets for Defendant's benefit and that of any other person or entity. Plaintiffs also seek to prevent Defendant's further attempts to unfairly compete with and breach his legal duties owed to Plaintiffs. Finally, Plaintiffs demand damages associated with Defendant's violations of law and contract and the unjust enrichment bestowed upon Defendant because of his actions described herein.

2.     Immediately before and after being informed of his involuntary separation from employment with Nalco for cause, Senior Account Manager Defendant Simon Walker delayed

return of his Company-issued laptop and downloaded to USB external drive(s) numerous Company documents including technical information, client data, and files containing highly confidential and trade secret information as further described below, all of which are extremely valuable to Defendant and to any employer similarly engaged in the highly competitive business of monitoring and controlling performance of industrial water treatment systems. Defendant illegally accessed, downloaded, and retained this information despite signing contractual obligations prohibiting him from doing so, despite his contractual obligations to return all Company confidential and trade secret information, and despite being expressly instructed during his termination that he was not to turn on or access the Company laptop computer assigned him. When Defendant returned his laptop, the Company's forensic software flagged the potential download of protected information leading the Company to retain a forensic expert, who is beginning to uncover the full extent of Defendant's misappropriation of confidential data and trade secret information. Since Defendant's misappropriation Plaintiffs have lost a significant customer for whom Defendant misappropriated confidential information about and managed while employed with Plaintiffs. It is believed and alleged herein that this customer was lost as a result of Defendant's misconduct and Defendant's breach of the restrictive covenants in his employment agreement with the Company.

3.     Since the filing of Plaintiffs' initial Complaint, Defendant Walker admitted under oath to taking and retaining Plaintiffs' information, files, and documents and that he should not have.

4.     In addition to economic and other damages, this action seeks injunctive relief enjoining Defendant from continuing to possess, utilize, and/or disclose Plaintiffs' confidential information and trade secrets and requiring Defendant to preserve and return all wrongfully retained Company property.

## PARTIES

5.      Ecolab, Inc. ("Ecolab") is a Delaware corporation with its principal place of business in the State of Minnesota. Ecolab is registered to do business and regularly conducts business in the State of Alabama and maintains a registered agent in the State of Alabama at 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104.

6.      Nalco Company, LLC ("Nalco") is a Delaware limited liability company with its principal place of business in the State of Illinois. Nalco is registered to do business and regularly conducts business in the State of Alabama and maintains a registered agent in the State of Alabama at 2 North Jackson Street, Suite 605, Montgomery, Alabama 36104. Nalco does business under the trade names "Nalco Water, an Ecolab Company" and "Nalco Water." Nalco is a subsidiary of Ecolab.

7.      Defendant Simon Walker resides in and is a citizen of the State of Alabama.

## JURISDICTION AND VENUE

8.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs are asserting claims for trade secret misappropriation under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*, and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

9.      The Court has supplemental jurisdiction over Plaintiffs' remaining causes of action under 28 U.S.C. § 1367, which states "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]"

10.     This Court has personal jurisdiction over Defendant Walker under Federal Rule of Civil Procedure 4 as Defendant Walker resides and is a citizen of the State of Alabama.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant Walker resides in the Northern District of Alabama and the events giving rise to Plaintiff's claims against Defendant Walker substantially occurred within the District.

## FACTUAL ALLEGATIONS

### The Company's Business, Confidential Information, and Trade Secrets

12.    Ecolab and its subsidiary Nalco are global leaders in industrial process and water treatment services, providing high quality water treatment management services to clients in such industries as food preparation, pulp and paper, agriculture, manufacturing, refining, mining, power production, healthcare, pharmaceutical, and high tech. They provide a broad spectrum of products and services to businesses throughout the United States including the State of Alabama, where they maintain a robust business.

13.    Management of industrial water treatment systems is a highly competitive business, and Ecolab and Nalco's clients, partners, and vendors are critical to their success in this growing and highly competitive market.

14.    Ecolab and Nalco partner with companies across a wide range of industries and develop solutions for each client's specific water treatment needs and business goals. This specialized information pertaining to each client is proprietary in nature and would be highly valuable to Ecolab and Nalco's competitors.

15.    Ecolab and Nalco have invested considerable sums of money in developing products, equipment, training programs, sales programs, technical service programs, and account records for the proper servicing of their customers.

16.    Ecolab and Nalco have developed and maintain a substantial amount of trade secret and confidential and proprietary information, including but not limited to: business plans; pricing, marketing and distribution strategies; product, branding, packaging and advertising development;

4

brand portfolio strategies; vendor/supplier relationships; global supply chain; client lists, preferences, and plans; the specific types of services performed for customers and clients; the type of equipment ordered or installed for customers or clients; the prices paid by each customer; business partner relationships and agreements; discount structures; channel development; product formulas; technical specifications, and intellectual property ("Trade Secret and Confidential Information").

17.    Ecolab and Nalco's Trade Secret and Confidential Information was developed over many years, with a substantial investment of labor, skill, money, and knowledge gained from experiences with clients, partners, technical experts, vendors, as well as other outside entities and agencies, among others.

18.    Ecolab and Nalco's Trade Secret and Confidential Information is highly valuable, not generally known outside of the Company, and would be of significant value to the Company's competitors if wrongfully disclosed to such entities. Ecolab and Nalco derive a competitive advantage and independent economic value, both actual and potential, from its Trade Secret and Confidential Information, because the Trade Secret and Confidential Information is not generally known to the public or to others who can obtain economic value from its disclosure or use.

19.    In order to protect their Trade Secret and Confidential Information, Ecolab and Nalco, among other things, require employees to execute agreements tailored to protect their valuable company assets, including by: (1) prohibiting employees from transferring or storing Company information onto any device or storage medium (physical or virtual) not provided or authorized in writing by the Company; (2) prohibiting departing employees from wiping, deleting or transferring any Company data from any electronic devices before returning such devices to the Company; (3) requiring employees who separate from the Company to return all Company property, data, business information, phones, computers, and electronic devices; and (4) requiring

employees to acknowledge and agree that employees have no right to privacy regarding any Company property and as such that Company has the right to conduct forensic examination(s) of any Company computers and/or electronic devices issued to employees or authorized for employee use for Company business.

20.　　Ecolab and Nalco also strictly require the use of computer passwords, limit access to Trade Secret and Confidential Information only to employees that need the information to perform their duties for the Company, maintain confidentiality policies in employee handbooks, maintain electronic communication and code of conduct policies regarding confidentiality, and stress the importance of maintaining confidentiality to protect Trade Secret and Confidential Information.

21.　　Ecolab and Nalco also use a secure computer network to store and maintain their proprietary, Trade Secret and Confidential Information.

### Defendant's Employment and Acquisition of Trade Secret and Confidential Information

22.　　Defendant Walker was employed by Nalco for approximately 17 years. Defendant was based in Tuscaloosa, Alabama as a Senior Account Manager in the Primary Metals Group.

23.　　As a Senior Account Manager in the Primary Metals Group, Defendant managed industrial and institutional accounts such as steel mills in the States of Alabama, Mississippi, and Texas. This included managing client water treatment processes, such as reviewing and analyzing technical chemical treatment data, reviewing operations and procedures, as well as managing and troubleshooting chemical formulations and reformulations. Defendant was responsible for maintaining and servicing the Company's accounts and soliciting new business accounts through resources provided by the Company.

24.　　Defendant provided services to, supported, and/or serviced clients of the Company.

25.     In order to perform his duties, Defendant was privy and given access to certain Company Trade Secret and Confidential Information, as otherwise described herein.

## Defendant Agrees to Hold the Company's Trade Secret and Confidential Information in a Fiduciary Capacity

26.     As a condition of his employment, Defendant executed an Employee Sales, Service, Marketing & Inventions Agreement (the "Employee Agreement"), attached hereto as **Exhibit A**.

27.     Defendant and an Ecolab representative executed the Employee Agreement, which also provides protections to Ecolab's "parent companies, sister companies, and subsidiaries" such as Nalco.

28.     As part of the Employee Agreement, Defendant acknowledged that by the nature of his role, he would "acquire knowledge of Company's Trade Secrets and its Confidential Information, which may include without limitation, information regarding present and future operations, customers and suppliers, pricing, business strategies, business methods, and employees (including the particular skills, talents and abilities of those employees)." *See* **Exhibit A**, ¶ 2.

29.     The Employee Agreement defines Trade Secrets as:

[I]nformation pertaining to Company including, but not limited to, a formula, pattern, compilation, program, device, method, technique or process, financial data, financial plans, product plans, a list of actual or potential customers or suppliers, pricing information, information about customer contacts, requirements or purchasing patterns, or the identities of or contact information for actual or potential customers or suppliers of Company that both:

(a) derives economic value, actual or potential from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(b) is the subject of efforts by Company that are reasonable under the circumstances to maintain its secrecy.

*See* **Exhibit A**, ¶ 2.

30.     With regard to Trade Secrets, Defendant agreed to hold such information "in a fiduciary capacity for the benefit of Company" and not to "directly or indirectly, use or disclose"

any such information that he "may have acquired during the term of Employee's employment with Company for so long as such information remains a Trade Secret." *See* **Exhibit A**, ¶ 2.

31.     The Employee Agreement defines Confidential Information as:

Company's confidential data or information which is valuable to Company but substantially inaccessible to the public and to competitors of Company, including, without limitation, business information, financial data, product information, the identities and contact information of actual or potential customers or suppliers, pricing information, and other information of a proprietary nature regarding the Company's business operations, excluding Trade Secrets. Notwithstanding the foregoing, the term "Confidential Information" shall not include information that Employee can establish by competent proof: (i) was generally known to or accessible by the public at the time Company disclosed the information to Employee; (ii) became generally known to or accessible by the public after disclosure by Company through no act or omission by Employee; or (iii) was disclosed to Employee, after the Employee's termination of employment with the Company, by a third party having a bona fide right both to possess the information and to disclose the information to Employee, provided such third party is not subject to an obligation of confidentiality with respect to such information.

*See* **Exhibit A**, ¶ 2.

32.     With regard to Confidential Information, Defendant agreed "that while employed with the Company and for a period of three (3) years after termination of Employee's employment with Company" that he would hold such information "in a fiduciary capacity for the benefit of Company" and would not "directly or indirectly, use or disclose" any such information "that Employee may have acquired (whether or not developed or compiled by Employee and whether or not Employee was authorized to have access to such Confidential Information) during the term of, in the course of, or as a result of Employee's employment by Company." *See* **Exhibit A**, ¶ 2.

33.     With regard to customers, Defendant agreed that "during employment with the Company and for a period of one (1) year immediately following the termination of his employment with the Company," he would not:

a. "Solicit, encourage, induce any customer of the Company with whom Employee did business or whose account was supervised by or assigned to the Employee at any time during the twelve (12) month period immediately preceding the termination of Employee's employment (regardless of

reason) for the purpose of providing a Competing Product or Competing Service;

b. Transact business with any Customer of the Company with whom Employee did business or whose account was supervised by or assigned to the Employee at any time during the twelve (12) month period immediately preceding the termination of the Employee's employment (regardless of reason) for the purpose of providing a Competing Product or Competing Service."

Exhibit A, ¶ 6(a-b).

34.    Defendant also agreed "[d]uring said one (1) year following termination, the employee also will not assist any Competing Firm to engage in the aforementioned activities prohibited by Subsection 6(a) and 6(b)."  Exhibit A, ¶ 6.  "A Competing Firm means any person or organization (including one owned in whole or in part by the Employee) which is engaged in the development, production, use, marketing or sale of a Competing Product or Competing Service."  Exhibit A, ¶ 6.  "A Competing Product or Competing Service means any product or service which is the same as, or similar to, and competes with a product or service of the Company which was part of the product or service line handled by the Employee, or by persons supervised by the Employee, during Employee's last year of employment with the Company."  Exhibit A, ¶ 6.

35.    The Employee Agreement also required that, upon termination of employment or Company request, Defendant would:

[R]eturn in good order all Company property and information in the Employee's possession, custody or control. Upon termination, Employee shall return all Company data, business information, credit cards, keys, automobiles and any other Company property in his possession. Employee shall not erase or delete any Company data from Company phones or computer or other electronic devices except as may be necessary in the regular course of conducting business for the Company. For example, it would be a violation of this provision for Employee to accept a position with another entity and/or give notice of Employee's resignation and then delete and/or erase Company data from Employee's Company assigned phone and/or computer device.

*See* **Exhibit A**, ¶ 11.

**Defendant's Termination and Subsequent Misappropriation of Company's**

**Highly Sensitive, Confidential and Trade-Secret Information**

36.     On October 3, 2022, Nalco terminated Defendant's employment when, after repeated warnings, Defendant continued to violate the Company's Code of Conduct, Workplace Respect Policy, as well as other policies.

37.     Defendant was informed of the decision to terminate his employment via a video conferencing meeting, during which he was told: that his employment was terminated effective immediately; to immediately return all Company property and devices; and neither to turn on or access his assigned company Computer for any reason.

38.     During the video conference, Defendant was advised that someone would come to his home that same day to collect his Company property, including his Company-issued laptop computer, but Defendant delayed return of his Company property by stating he was not available that day and that the Company would have to retrieve the property the next day, on October 4, 2022.

39.     After securing Defendant's Company-issued laptop on or about October 4, 2022, the Company's forensic software flagged the device for potential download of sensitive information.

40.     The Company was forced to then retain a forensic expert who has only just begun to uncover the full extent of Defendants misappropriation of Company Trade Secret and Confidential Information. So far, the Company has uncovered information demonstrating that just before or immediately after being informed of his termination from employment and not to access his Company-issued device(s), Defendant downloaded a vast number of documents onto external USB device(s), including files containing highly confidential and trade secret information concerning the Company's business and customers.

41.     These files illegally accessed and downloaded are highly sensitive, confidential and constitute the Company's Trade Secret and Confidential Information.

42.     It also appears that Defendant improperly deleted Company business information.

43.     On information and belief, following his termination of employment, Defendant used his Company computer to access three personal web-based email accounts and used the accounts to take Company Trade Secrets and Confidential Information.

44.     The Company's Trade Secret and Confidential Information misappropriated by Defendant includes training materials and programs, client and customer information regarding the Company's pricing, pricing histories, customer specific account information, customer contact information, margins, technical client data, and chemical formulations used to service client accounts.

45.     Amongst the Company's Trade Secret and Confidential Information Defendant downloaded and accessed, was confidential documents and files related to the Company's client Nucor Steel Tuscaloosa.  It is believed that Defendant has utilized this data to assist a Competing Firm and Defendant's subsequent employer with obtaining Nucor's business.

**Defendant Reaffirms his Duties Owed to and Restrictive Covenants with the Company**

46.     As part of Defendant's termination from employment, the Company offered Defendant sixteen (16) weeks of salary continuation and outplacement services in exchange for his execution of Transition Agreement which contained specific language ratifying his previously executed Employee Agreement, including as follows:

> **Confidential Information.** WALKER acknowledges that on or about April 20, 2021, WALKER executed an Employee Sales, Service, Marketing and Inventions Agreement which is attached hereto as Exhibit A. By execution of the within Agreement, WALKER ratifies the terms and conditions of said Employment Agreement. In the event WALKER violates the terms of said Employment Agreement, in addition to all other remedies available to NALCO, all transition pay payable herein shall cease.

* * *

> At the end of the TERM OF EMPLOYMENT, or at any earlier time as may be requested by NALCO, WALKER will return to NALCO all records, reports, studies, letters, files or other documents in WALKER's possession or to which WALKER has access concerning NALCO's business or affairs, or the business or affairs of any of NALCO's subsidiaries and affiliates, and WALKER will retain only such personal records as WALKER may have relating to non-NALCO activities.

*See* Agreement attached hereto as **Exhibit B**, ¶ 3.

47.     On October 10, 2022, Defendant executed the Transition Agreement reaffirming his prior obligations owed to the Company regarding its Trade Secret and Confidential Information and other restrictive covenants.

48.     Defendant was recruited and became employed by one of the Company's main competitors, ChemTreat, Inc. Defendant advised that ChemTreat created a customized technical consulting position for him.  Upon information and belief this position was created to take advantage of the Company's information misappropriated by Defendant and Defendant's relationships and good will with Plaintiffs' customers.

49.     In January 2023, one of the Company's customers, Nucor Steel Tuscaloosa, Inc. terminated its Scope of Work with the Company effective February 28, 2023 and thereafter began transitioning the work performed by the Company Defendant Walker's subsequent employer, ChemTreat.

50.     Nucor employees advised Plaintiffs that the decision to transition to ChemTreat was made months earlier but they were told not to tell Nalco/Ecolab.  ChemTreat began installing controllers and having chemicals delivered in January and February 2023, even before the Company's Scope of Work terminated.

51.     Defendant Walker managed, supported, and serviced Nucor-Tuscaloosa during his employment with the Company.  It is believed that Defendant Walker provided confidential information and assistance to ChemTreat in obtaining Nucor-Tuscaloosa's business.

52.     ChemTreat was able to get up and running at Nucor-Tuscaloosa very rapidly leading Nalco/Ecolab to believe they must have benefited from assistance from Defendant Walker and the Company's confidential information provided to them by Defendant Walker.

53.     The Company is entitled to injunctive relief preventing any actual or threatened misappropriation and misuse of its Trade Secret and Confidential Information by Defendant and/or his agents, and other persons who are in active concert or participation with them (collectively, "Covered Persons").

54.     This injunctive relief should include, without limitation, an Order prohibiting the Covered Persons from using or disclosing any of the Company's Trade Secret and Confidential Information in any manner.

55.     Further, the injunctive relief should include an Order requiring the Covered Persons to return to the Company, and not retain in their possession, custody, or control, any and all Trade Secret and Confidential Information of the Company, and to certify under oath that all Trade Secret and Confidential Information has been returned.

56.     In addition, the Company is entitled to injunctive relief restraining the Covered Persons, for a period of 18 months, from conducting, carrying on, or engaging in any competitive business that was developed and/or implemented, in whole or in part, directly or indirectly, through the use of any Company Trade Secret and Confidential Information.

57.     The Company has a substantial likelihood of prevailing on the merits of its claims.

58.     Unless the Covered Persons are enjoined from the conduct described herein, there is a substantial threat that the Company will continue to suffer irreparable harm, including loss and misuse of its Trade Secret and Confidential Information, goodwill, and financial losses that presently are not calculable.

59.     The irreparable harm that the Company will suffer if injunctive relief is denied outweighs the potential harm (if any) to Defendant if injunctive relief is granted.

60.     Granting the requested injunctive relief will not disserve the public interest.

61.     The Company has no adequate remedy at law.

62.     Consequently, the Company is entitled to injunctive relief as set forth herein.

<u>**COUNT I**</u>
**Violation of the Defend Trade Secrets Act (18 U.S.C. § 1831 *et seq.*)**

63.     Ecolab and Nalco have developed trade secret information including, but not limited to, technical data, formulas, patterns, compilations, ratios, programs, methods, techniques, processes, know-how and plans that derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

64.     The information, documents, and materials stolen and misappropriated by Defendant constitute trade secrets within the meaning of, and subject to protection under, the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1831 *et seq.*

65.     Ecolab and Nalco regularly transact business throughout the United States, including in person and by phone, internet, and mail, and the Company's trade secrets relate to this business and are used in interstate commerce.

66.     Defendant acquired the Company's trade secrets by improper means, including but not limited to knowingly accessing, downloading, and using this information in violation of his contractual duties owed to the Company.

67.     The information contained in these documents is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use. The Company has spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor.

68.     Ecolab and Nalco take, and at all times here relevant, have taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include restricting availability of confidential information to key employees, requiring key employees (like Defendant) to execute agreements with confidentiality provisions and restrictive covenants, physical security measures to protect against the disclosure of sensitive materials to third parties, and IT security efforts.

69.     By accessing the Company's computer network without authorization and downloading trade secret information, Defendant has committed both an actual and threatened misappropriation and misuse of the Company's trade secret information in violation of the DTSA.

70.     Upon information and belief, and as the Company expects to establish on further investigation and discovery, Defendant has improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) confidential business information and strategies and trade secrets contained in the documents and information he took or disclosed from the Company without authorization and in breach of his contractual duties owed to the Company in order to compete against the Company.

71.     Defendant engaged in this conduct despite acquiring this information without authorization.

72.     Upon information and belief, Defendant engaged in this misconduct at a time he was no longer employed with the Company and after he was instructed not to access the Company's computer database.

73.     As a direct and proximate result of Defendant's actual and threatened misappropriation of trade secrets, the Company has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendant is enjoined

from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to the Company.

74.     To the extent that Defendant has already provided the Company's trade secrets or other confidential information to third parties, those parties should also be ordered to return and/or destroy that information.

75.     As a direct and proximate result of Defendant's misappropriation, the Company has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the DTSA. Each of the acts of misappropriation was done willfully and maliciously by Defendant to unfairly compete against the Company and benefit himself and third parties, thereby entitling Plaintiffs to exemplary damages to be proved at trial.

## COUNT II
**Violation of the Alabama Trade Secrets Act (Ala. Code § 8-27-1, *et seq.*)**

76.     Ecolab and Nalco have developed trade secret information including, but not limited to, technical data, formulas, patterns, compilations, ratios, programs, methods, techniques, processes, know-how and plans that derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

77.     The information, documents, and materials stolen and misappropriated by Defendant constitute trade secrets within the meaning of, and subject to protection under, the Alabama Trade Secrets Act ("ATSA"), Ala. Code § 8-27-1, *et seq*.

78.     Ecolab and Nalco regularly transact business throughout the United States, including in person and by phone, internet, and mail, and their trade secrets relate to this business and are used in interstate commerce.

79.     Defendant acquired Ecolab and Nalco's trade secrets by improper means, including but not limited to knowingly accessing, downloading, and using this information in violation of his contractual duties owed to the Company.

80.     The information contained in these documents is valuable because it is not generally known or readily accessible, through proper means, to others who can profit from its use. Ecolab and Nalco have spent significant sums, in terms of both financial and human resources, to develop and maintain this information, which would be of great value to any competitor.

81.     Ecolab and Nalco take, and at all times here relevant, have taken reasonable measures to maintain the confidential and secret nature of this information. Those steps include restricting availability of confidential information to key employees, requiring key employees (like Defendant) to execute agreements with confidentiality provisions and restrictive covenants, physical security measures to protect against the disclosure of sensitive materials to third parties, and IT security efforts.

82.     By accessing the Company's computer network without authorization and downloading trade secret information, Defendant has committed both an actual and threatened misappropriation and misuse of the Company's trade secret information in violation of the ATSA.

83.     Upon information and belief, and as Plaintiffs expect to establish on further investigation and discovery, Defendant has improperly retained, used, and/or disclosed (and continues to retain, use, and/or disclose) confidential business information and strategies and trade secrets contained in the documents and information he took or disclosed from the Company without authorization and in breach of his contractual duties owed to the Company in order to compete against the Company.

84.     Defendant engaged in this conduct despite acquiring this information without authorization.

85.     Upon information and belief, Defendant engaged in this misconduct at a time he was no longer employed by Nalco and after he was instructed not to access the Company's computer database.

86.     As a direct and proximate result of Defendant's actual and threatened misappropriation of trade secrets, the Company has suffered irreparable harm and will continue to suffer irreparable harm that cannot be adequately remedied at law unless Defendant is enjoined from engaging in any further acts of misappropriation and from continued possession in any form of trade secret information belonging to the Company.

87.     To the extent that Defendant has already provided the Company's trade secrets or other confidential information to third parties, those parties should also be ordered to return and/or destroy that information.

88.     As a direct and proximate result of Defendant's misappropriation, the Company has suffered and continues to suffer damages and irreparable harm, and is entitled to all damages, attorneys' fees, costs and remedies permitted under the ATSA. Each of the acts of misappropriation was done willfully and maliciously by Defendant to unfairly compete against the Company and benefit himself and third parties, thereby entitling Plaintiffs to exemplary damages to be proved at trial.

## <u>COUNT III</u>
### Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030 et seq.)

89.     The federal Computer Fraud and Abuse Act ("CFAA") provides, "[w]hoever. . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains. . .information from any protected computer. . .shall be punished as provided in subsection (c) of this section." 18 U.S.C.A. § 1030(a)(2)(C). The Act provides that a person who accesses a computer with authorization, nevertheless "exceeds authorized access" if he uses his access "to

obtain or alter information in the computer that the accesser is not entitled to so obtain or alter." 18 U.S.C.A. § 1030(e)(6).

90.     The Act provides that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C.A. § 1030(g). A civil claim under the Act may be brought by any person who has suffered or would have suffered damages, loss or injury as described in Sections (a)(5)(B)(i)-(v) of the Act. A "loss" is defined in the Act as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C.A. § 1030(e)(11).

91.     Section (a)(4) of the Act likewise prohibits actions whereby a person "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value. . . ." 18 U.S.C.A. § 1030(a)(4).

92.     Defendant's wrongful access of the Company computer network and database without authorization, at a time he was no longer employed by Nalco, and after expressly being instructed that he was no longer authorized to access the Company's computer devices or computer network, constitutes a violation of the Computer Fraud and Abuse Act.

93.     As a result of Defendant's violation of the Computer Fraud Act, Plaintiffs have suffered and continue to suffer loss and damage to the integrity of data, computer systems and loss of confidential information and trade secrets, resulting in damages far in excess of $5,000.00 and absent injunctive relief will continue to suffer irreparable harm and damages.

<u>**COUNT IV**</u>
**Breach of Contract – Employee Agreement**

94.    The Employee Agreement is a valid and enforceable contract executed by Defendant on or about April 20, 2021.

95.    Defendant's compliance with the Employee Agreement and the covenants therein were conditions precedent to his employment or continued employment and other valuable consideration.

96.    Defendant breached and is continuing to breach his contractual promise not to, directly or indirectly, misuse or improperly disclose the Company's Trade Secrets for so long as such information remains a Trade Secret.

97.    Defendant breached and is continuing to breach his contractual promise not to, directly or indirectly, misuse or improperly disclose the Company's Confidential Information for a period of three (3) years after this voluntary or involuntary termination from employment.

98.    Defendant breached and is continuing to breach his contractual promise to promptly return all Company property and information, including Trade Secrets and Confidential Information to Company's possession.

99.    Defendant impermissibly possesses and continues to possess the Company's Trade Secret and Confidential Information in furtherance of Defendant's efforts to unfairly compete. In doing so, Defendant has violated his obligation to hold this information in a fiduciary capacity and to refrain from using this information except as necessary to perform his duties for the Company or as otherwise authorized by the Company.

100.    Defendant breached his contractual promise not to solicit, encourage, or induce certain customers of Plaintiffs to purchase competing products and/or services, and Defendant further breached his contractual promise not to assist any Competing Firm with soliciting competing business from Plaintiffs' customers.  Upon information and belief, Defendant directly

20

solicited, encouraged or induced and/or assisted ChemTreat, a Competing Firm, with obtaining Nucor-Tuscaloosa's business in direct violation of his Employee Agreement.   It is believed Defendant further breached his Employee Agreement by utilizing the Company's Confidential Information to assist ChemTreat with obtaining Nucor-Tuscaloosa's business and thereafter servicing Nucor-Tuscaloosa.

101.    As a result of Defendant's breach of his contractual obligations, the Company has been damaged, and will continue to be damaged, in an amount to be proven at trial.

## COUNT V
### Breach of Contract – Transition Agreement

102.    The Company re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

103.    The Transition Agreement is a valid and enforceable contract executed by Defendant on or about October 10, 2021.

104.    In exchange for valid consideration, including four (4) months of salary continuation and outplacement services, Defendant ratified and further agreed to be bound by the terms of his previously executed Employee Agreement.

105.    As otherwise stated herein, Defendant has breached the Transition Agreement by misappropriating, improperly disclosing, and misusing the Company's Trade Secret and Confidential Information.

106.    Defendant has breached the Transition Agreement by and through the breaches of the Employee Agreement as outlined above.

107.    The Company has already been severely injured by Defendant's improper and prohibited actions. If Defendant is not enjoined from continuing to breach his contractual duties, the Company will be irreparably injured.

108.     As a result of Defendant's breach of his contractual obligations, the Company has been damaged, and will continue to be damaged, in an amount to be proven at trial.

## COUNT VI
### Breach of Covenant of Good Faith and Fair Dealing

109.     The Employee Agreement and Transition Agreement executed by Defendant contain implied duties that Defendant will act fairly and in good faith towards Plaintiffs.

110.     Pursuant to the Employee Agreement and Transition Agreement, Defendant had a duty not to do anything to prevent Plaintiffs from receiving the benefits of these agreements.

111.     Through the actions as set forth in this Complaint, Defendant has breached this duty of good faith and fair dealing owed to Plaintiffs.

112.     As a result of Defendant's breach of the covenant of good faith and fair dealing owed to Plaintiffs, Plaintiffs have been damaged, and continue to be damaged, in an amount to be proven at trial.

## COUNT VII
### Unjust Enrichment

113.     By its actions as alleged herein, including but not limited to its misappropriation, misuse, and wrongful disclosure of the Company's confidential information, Defendant has been and will be enriched and, correspondingly, the Company has been and will be impoverished.

114.     Defendant's enrichment and the Company's impoverishment are and have been without justification.

115.     Justice and equity demand that the money and benefits by which Defendant has been enriched in fact belong to the Company.

116.     The Company lacks a legal remedy sufficient to redress Defendant's unjust enrichment.

## JURY DEMAND

The Company respectfully demands a trial by jury on all counts.

22

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the foregoing acts complained of, Plaintiffs respectfully requests that this Honorable Court enter one or more orders granting it the following relief:

A.     A permanent injunction requiring Defendant (and any persons acting in concert with him or on his behalf) ordering that:

    1)   Defendant, his agents, servants, employees, representatives, and attorneys, and other persons who are in active concert or participation with any of the foregoing (collectively, "Covered Persons") are ordered, restrained and enjoined as follows:

        i.   Directly or indirectly, disclosing or making any use of any Trade Secret and Confidential Information of Ecolab and Nalco;

        ii.  Provide a full and complete accounting of all electronic devices, email accounts, cloud-storage accounts, and other devices/accounts that Walker had access to and that any of the information that Walker improperly downloaded and copied may have been downloaded to or accessed as stated in the Complaint;

        iii. Take all necessary steps to maintain and preserve all potentially relevant evidence regarding the allegations in the Complaint, including, but not limited to, all indicia and potential evidence relating Walker's misappropriation of Ecolab's trade secrets and confidential/proprietary information and his and others potential access of that same information by any and all electronic devices, email accounts, including internet e-mail accounts, cloud-storage based accounts, and the like within its possession, custody or control;

iv.   Make available for inspection and imaging all computers, external storage devices, mobile devices, and all personal Cloud and email accounts including internet-based e-mail accounts in Walker's possession and/or control, to determine the full extent of Defendant Walker's access, possession, retention, and use of Ecolab's confidential information or trade secrets.

2)   the Covered Persons return to Plaintiffs any Trade Secret and Confidential Information that is in their possession, custody, or control (including but not limited to Trade Secret and Confidential Information in paper form and in electronic form, wherever and however stored, including but not limited to personal computers, cloud storage, external storage media, smart phones and other handheld devices, and email accounts) and to the extent that any such information is maintained in electronic form;

3)   until further Order of the Court, the Covered Persons are restrained from conducting, carrying on, or engaging in any competitive business that was developed and/or implemented, in whole or in part, directly or indirectly, through the use of any Company Trade Secret and Confidential Information, (the "Prohibited Business"); and

B.      Judgment in favor of Plaintiffs and against Defendant;

C.      An award to Plaintiffs of actual damages (such as lost profits) and disgorgement of amounts by which Defendant has been unjustly enriched, or in the alternative, a reasonable royalty;

D.      An award to Plaintiff of punitive and/or exemplary damages;

E.      An award to Plaintiffs of their reasonable attorneys' fees and its costs incurred in this action;

F.      An award to Plaintiffs of pre-judgment and post-judgment interest; and

G.      Such other and further relief as this Court deems just and proper.

Done this 17th day of May 2023.

Respectfully submitted,

*/s/ Edward F. Harold*
Edward F. Harold (Bar No. asb-0669-d55h)
J. Michael Honeycutt (*pro hac*)
**FISHER & PHILLIPS LLP**
201 St. Charles Avenue, Suite 3710
New Orleans, LA 70170
Telephone:  (504) 592-3801
Facsimile:  (504) 529-3850
E-mail: eharold@fisherphillips.com
E-mail: jhoneycutt@fisherphillips.com

**ATTORNEY FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2023, I electronically filed the foregoing Motion for Leave to Amend the Complaint with the Clerk of Court using the CM/ECF system, which will automatically notify and send a copy to Plaintiff's counsel electronically:

E. Clark Summerford
ZEANAH, HUST, SUMMERFORD
WILLIAMSON & COX, L.L.C.
P.O. Box 1310
Tuscaloosa, AL 35403
cs@zeanahhust.com

Dated this 17th day of May, 2023.

/s/ Edward F. Harold
FISHER PHILLIPS LLP